Our second case, number 16-1421. As soon as the lawyers are ready, we'll hear from Ms. Sobel. Good morning, Your Honors. May it please the Court, my name is Maxwell Sokol on behalf of the appellant, Michael Ryu. We are appealing the denial of summary judgment on Mr. Ryu's Fourth Amendment claim versus Mr. Whitten in his individual and official capacity. Here, the sole issue on the Fourth Amendment claim is Mr. Whitten's... I'm sorry to cut you off so soon, but are you also appealing on the state law claims? We are appealing the dismissal of the state law claims. Frankly, I do not see a way where we lose on the Fourth Amendment claim but win on the state claims. So the Fourth Amendment is the focus of... On the merits? On the merits, that's correct. It seems to me that the immunity law is very different. The immunity law is certainly different. The elements and the liberty interest at stake is the same. You're basically saying that if the Fourth Amendment claim falls, that's it? You don't want us to consider the state law claims separately? I'm certainly happy if the Court considers the state law claims separately. I said that because the focus of my argument today will be on the Fourth Amendment claim and I'm more than happy to answer any questions on the state laws, but I am comfortable resting on the pleadings on those claims. With respect to the federal Fourth Amendment claim, the issue... The Fourth Amendment issue is Mr. Whitten's duty of individualized suspicion and probable cause prior to having Mr. Ryu arrested. His duty to identify the proper party to be arrested. Here, Mr. Whitten has testified that he assumed Mr. Ryu was liable for corporate... Is it your position that the warrant was not supported by probable cause? That is my position, yes. The capias was based on Mr. Ryu's failure to answer a summons to answer interrogatories addressed to Michael Ryu, comma, registered agent. Every tax collection document in this case, the warrant in debt, the summons to answer interrogatories, and the capias was addressed to Michael Ryu, registered agent. It's a very specific situation, this case, where the requesting officer identifies the party to whom the tax collection documents are addressed in a very specific capacity that strictly delimits his role. As registered agent, his sole... Did the defendant receive a summons to appear in court? He did. The summons was addressed to Michael Ryu, registered agent, and obviously, as a registered agent, his sole purpose is to receive process. Did he receive that? He did receive it, yes. Did he appear in court as the summons required him to do? He did not because he was identified as registered agent, so he acted like one. He forwarded it to his principal. So he just decided not to comply with a court order? Your Honor, I will direct you to page 75 and 76 of the appendix. That is the summons, and on the summons, he is identified as registered agent. He also says same as defendant, registered agent, same as defendant. So up until this point, he had also been served with a warrant in debt. He's saying he's not being served as a registered agent. He's being served as a registered agent and a defendant, and I understand you think that that is erroneous, but nevertheless, here it is. He's been summoned. I understand that on scrutiny of the document, it is arguable that he is being served. It says that he is the defendant. Your client's a lawyer, right? He is. How long has he been a lawyer? I'm not completely sure. Several years. He's been a lawyer. And he received a summons and didn't comply with the summons, and based on that, a warrant was issued for his arrest. What is wrong about the warrant? The warrant is based on the fact that your client was issued a summons to appear in court and didn't appear in court. It is true he was issued a summons. It is true he didn't appear in court. So how is the warrant itself unreasonable? Mr. Ryu was personally served in the sense that he was handed a document. If, or rather, accepting the position that personal service in the sense of coming into contact with a document that identifies the party as a registered agent, if that serves to put the recipient of the document on notice, there are huge due process problems lurking in the background of accepting that argument. There was no sense that he was on notice that he stood to be arrested based on his receipt of the tax collection document so far. The warrant in debt, which he had received prior to issuance of the summons, the summons was issued because the company defaulted on the warrant in debt. Warrant in debt appears at page 50. At this point, he is not identified as the defendant. The defendant is identified as C.S. Property and the party to serve Michael Ryu, registered agent. So given the specific chronology of this case, he served with the warrant in debt where the defendant is identified properly as C.S. Property, and then later he served with the summons as registered agent. I know who the defendant in this case is. It's C.S. Property. I've come into contact with the tax collection documents so far. So I submit respectfully that there is no sense that he was on notice that he stood to be arrested upon coming into contact with this document. Mr. Witten identified the capacity in which he was being served, personally served. He's a registered agent. That is his sole job is to be personally served. There's no sense that he was on notice, and I hope to impress upon the court that there is a major difference for due process reasons and in the Fourth Amendment question. There's a major difference between personal service in the sense of being handed a document and being served in one's personal capacity, which would give someone fair notice that they stand, that they are being asked to comply with the document. He was not served in his personal capacity. There's not a due process claim in this case, is there? No, there's not. I bring up the due process issue kind of as a reductio ad due process problem. I mean, accepting the argument that this constituted notice raises due process problems. But that issue isn't before us, so no one would be accepting or not accepting that argument. I guess I just don't understand where due process is coming from. If he had a Fourth Amendment claim that he was unreasonably seized, but as Judge Thacker points out, he was seized pursuant to a warrant based on probable cause that he had not complied with a summons. The unreasonableness of the seize. So the due process issue is I identify it as a reason that it's impossible to interpret this document as putting him on notice. You're correct. There is no due process claim before the court. Maybe he needs to go back to court and say, look at this. I got arrested and I wasn't on notice. I'd like to bring a due process claim. I mean, had he been on notice. I'm sorry. Do you mean in the civil litigation? Yeah, okay. So we had a due process claim below and, frankly, dropped it because the liberty interest here we're talking about is arrest. And so the Supreme Court case law is clear that that is located in the Fourth Amendment. You feel you can't bring a due process claim in this context. We felt that focusing the issues on appeal was appropriate. So the right that you think was violated was his Fourth Amendment right. Against unreasonable seizure. When we evaluate those, we look at the warrant and whether or not it was supported by probable cause. And the warrant is J78. What is not correct about this warrant? So the warrant was. The reason is defendant failed to appear after personal service. You said earlier that he did receive personal service. In the sense that he was handed a document. Yes. He was not served in his personal capacity. If you were to define personal service, the very first thing you would say is handed a document. The next thing might be mailed one, left at the door. But, Your Honor, that's what a registered agent is. He's a human PO box. I'm not talking about the order to get him to court that he did not comply with. I'm talking about the warrant. You're talking about the Fourth Amendment. So I'm looking at the key document here for your argument. What's wrong with the probable cause that's listed here, which says defendant failed to appear after personal service? He did fail to appear after personal service in your own words. So the KPIS is in the first instance issued by a clerk. And in that sense, whatever presumption of reasonableness attaches to an arrest warrant issued by a magistrate simply is not present here. At the bottom, you'll see it's signed by a clerk. As well as case law support for that, for what you just said. Frankly, I have not found a case where an arrest was predicated on a clerk-issued KPIS, as in this case. However, the reasoning of the Messerschmitt and most recently out of this circuit, talking about the presumption of reasonableness that attaches to a warrant simply isn't present here because there is not someone scrutinizing the document. Which brings me to your point, why is this document problematic? A clerk in a court is entitled to rely on representations that a court officer makes to it. Here, this warrant was procured through the misrepresentation that Mr. Ryu had any capacity to answer for any corporate debts. He simply did not, as registered agent, as Mr. Witten knew prior to requesting it. He had the SEC records in his file showing Mr. Ryu on the one hand as registered agent and the corporate directors on the other hand as not Mr. Ryu's. Totally different people. That appears in the record at 48 and 91A, Ms. Blamer's testimony, that the SEC records were in fact in the file. When he received the order, the summons to appear in court, as you say the registered agent, did he tell his clients to appear in court? He forwarded this to his corporate principals. He was not in an attorney-client capacity with them at that point. He was just their registered agent. He had assisted in helping them form the corporation and then later on was bankruptcy counsel in an unrelated proceeding, but at this point he was not their lawyer. He had no duty to scrutinize a document and he was handed it and it said registered agent. So if you were served with this and told to appear in court and it said after registered agent, you would just send that on to your client and be about your business. Speaking personally, I just can't imagine getting a court order and not going and appearing and explaining. I don't know anything about this. I'm really sort of awestruck that he would do this. Frankly, I've never been in the position of registered agent where my entire job is to receive legal papers. So if we are imposing a duty upon or expect. I think they hadn't said when they served him registered agent. They just served him. It would be an error. A totally different case. It's a different case if he's not identified as registered agent. No, it's their designation of him as registered agent. Not the fact that he was registered agent, but their designation of him as registered agent. That's the only thing that would be different in my hypothetical, that he would just not say on it registered agent, but he would still have no obligation to go in because he would know the only reason this is sent to me is I'm registered agent. I'm just going to send it on. Well, my position is that's a completely different case. Here, I don't know what. It's a different case. What would be the result in that case? Would he be required to turn up in court then? I believe so. I don't see a reason why not. He would be making a mistake. The same mistake, right? But, I mean, there's a long line of cases saying that I see my time is up in five seconds. Can I finish answering? There's a long line of cases that say just because you've identified the wrong party doesn't mean you can ignore a valid court order. What we are asking the court to hold would not intrude upon that line of cases. This is a very specific fact pattern. He's identified in a capacity that strictly delimits his role. It would be a different story if he wasn't. People are misidentified on court documents all the time. It doesn't mean they can ignore them. Here, his entire job was to receive legal papers. He was identified as a registered agent, so he acted like one. Thank you. Good morning. May it please the Court. Julia Judkins for Daniel Witten, county attorney for Warren County. I believe, Your Honor, I have focused on the issues here. This is not a Fourth Amendment case because, at worst, Mr. Witten was negligent. And where was he negligent at worst? When he signed the warrant in debt that contained, if you look at the underlying record that contained about 12 to 15 pages of documents and didn't look at the screenshot from the State Corporation Commission. There are several sheets in the original warrant in debt that contain the screenshots. One is the registered agent screenshot. One is the one identifying who the officers were. So Mr. Witten, who comes to work for the county in 2010 with a procedure in place, put in place because a general district court judge told the then county attorney, you all got to serve the registered agents when you file these cases. All right. So, at worst, we have a negligence case because the lawyer is the captain of the ship. No matter who prepares the pleadings, and the record below shows these things come in in batches of 2 to 400 at a time. They're docketed 25 to 30 at a time. And he signs the warrant in debt. And it's actually properly prepared at that point. But he never personally checked, was Mr. Rue also an officer, an agent? As the process went on, he assumed he was. He assumed he was. Why? Because he's a lawyer of limited experience who didn't look at what the document said. And Mr. Rue never showed up for anything, anything in this case. You can't ignore the bankruptcy proceedings are extremely relevant because when the warrant in debt was served, there was no bankruptcy. Mr. Rue testified, I filed the bankruptcy because I got served with a warrant in debt. And he filed pleadings with the bankruptcy court saying these are going to be my duties, including negotiating with creditors. He didn't do anything. He didn't find out. Default judgment got entered because of a series of mistakes. You're not contesting, right? I mean, don't you concede that this summons was improper? I concede that it was voidable, not void. They made a mistake. You're not supposed to summons the registered agent who is not also an employee or a director, right? You're not. Yes. You're not supposed to do that. No. Because you are, in fact, conceding that the summons was in error. Well, what happened before then is relevant if the court is going to look into whether or not Mr. Witten was grossly negligent. Because what happened before then is. What makes you think we're looking into that? Well, if you're not, I'm fine with that. Because you asked. It's an issue that came up because of the state law claims. Can I ask you about the state law claims? Yes. Because I do find them tricky. So the district court just said, well, there's qualified immunity on the Fourth Amendment claim, so I'm just dismissing all of the claims against him. I mean, I think you can see that there is no qualified immunity for gross negligence or intentional torts in Virginia, right? There's no sovereign immunity for that, for intentional torts. Yes. So the district court didn't quite get this right on the state law claims. I think he didn't quite get to it altogether on the state. That's what I think. Truthfully, I think he didn't. There are some Virginia cases we've cited, the Shan case, where the judges used qualified immunity instead of sovereign immunity. Sometimes they use it interchangeably, and they really shouldn't. They're two different things. And there's qualified privilege, and sometimes they get that confused. What do you want us to do on the state law claims, given that the district court didn't really get to them? Well, you have the authority to dismiss them for the right reasons, sovereign immunity. We also could just decline to exercise subpoena. Yes, you could. You could. But one thing that's very important in this case is we're not talking about a warrant in a criminal case. Everyone's using the word warrant. We're talking about a capious attachment of the body, civil. And that's what, at Appendix 214, happened. And the reason why this is voidable and not void, and why, to paraphrase, Apius Claudius Caicus, who said, man is the architect of his own fortune, I argue to you Mr. Rue was the architect of his own misfortune for the reasons you questioned Mr. Rue's counsel. This document is the summons. It actually, had it been prepared properly, would have had the defendant's name where the defendant line is. And if it was also serving the registered agent under the statute because he was the company's out-of-state, serve also. That's what it would have been. Now, Mr. Rue, based on this record, he had no more idea than the man in the moon whether or not this was properly served on him. He admitted. He didn't even know he shouldn't have been arrested until he went back to his office after release and looked up the statute. Any person of light, any reasonable person looking at this can see this is a mistake. He's the person summoned, though. He is the person summoned. And it doesn't matter whether it says after his name, Esquire, or Mr. It doesn't matter. He didn't conclude that he didn't have the obligation because of the existing law. He just had his assistant fax it over to Mrs. Kim, who doesn't speak English, who needs an interpreter, and he never even called her up and said, hey. He could have picked up the phone and called Mr. Witten and said, you've got this. This is wrong. This is a mistake. So it's void of ball. But one cannot just sit under Virginia law. And that's why this isn't a Fourth Amendment case. He wasn't seized in violation of the Fourth Amendment. He was arrested because he ignored a validly issued court summons. And a capeus for attachment of the body for civil contempt was issued. And it was properly issued. And all of it could have been avoided had he just done whatever he should have done. It all could have been avoided, too, right, if Mr. Witten had checked before the summons went out to make sure that he was, in fact, an employee or a director of the company. That's true. I mean, in fairness, right, that's where things really went off the rails. But it does start back for a series of failure to adequately identify the county as a creditor for these taxes. I think, for me at least, and I don't want to speak for my colleagues, but it would be very helpful for me if we just assume Mr. Witten messed this up. I did say that. Okay. He was supposed to check. And we're going forward from that. Oh, I know. I'm saying this is a negligence case. But negligence does not a Fourth Amendment violation create or a 1983 claim create. So there's no gross negligence, the want of even scant care. This gentleman, Mr. Rue, was served multiple times with pleadings. So all of your argument here, just so I can understand it, because it's hard for us to scan exactly what you're doing, or it's hard for me. I should speak only for myself. All this is directed at the state law claims? No. It's not a Fourth Amendment claim. You mean all my argument? Yeah. No, no. I'm addressing the Fourth Amendment claims because I'm saying all there is is a negligence, negligence against Mr. Witten. And the case law, we've cited the case law in our brief that negligence does not support a 1983 violation. Okay. It's not that argument. All right. Okay. And as to, yes, there really is. Can I just ask a quick question? So the district court treated this as a qualified immunity case on the Fourth Amendment. Yes. But you're not arguing here that absolute prosecutorial immunity should apply? Well, he didn't rule on that. Yes, I argued it on summary judgment. But you didn't raise it here. No, I did not. Why not? Well, because I, first of all, honestly, I'm not sure the question is that clear on whether Mr. Witten. I'm not sure it is that clear. And I didn't. Why wouldn't it? I'm just curious now, since you didn't raise it. It's waived. But why wouldn't it apply? Well, arguably, it could apply to that one instance when they were in court and the judge. I want to clarify, it was a judge involved in this process issued a KPIS, not just a clerk. But arguably, it could apply at that level in the court proceeding when Mr. Witten, you've got it in the record, in the appendix, appears before the general district court judge on the return for the summons. And the judge says, and that's what happens in general district court. The judge says, you've got personal service. Do you want, are you requesting a KPIS? Yes, I'm requesting a KPIS. So it's not just a clerk. The clerk physically prepares it after the court hearing. So your view is that prosecutorial immunity, absolute immunity, doesn't attach unless you're in court? No, it attaches when you're prosecuting. It applies in civil proceedings. It does. It does. It applies social services. You don't need issuing a summons as the initiation of judicial proceedings. Yes, I do. And honestly, I didn't think I waived it by not arguing it in the brief, but I guess I did. So I didn't mean to. There's a lot of law on that. I know. I know. I shouldn't get you so far. That's all right. I'm just curious. No, I do, but I thought my strongest argument was at here you have at best a negligence argument against Mr. Witten that doesn't support a constitutional violation. So then you go to the state law claims and you have sovereign immunity and no, everybody admits on deposition by Mr. Glasberg, Mr. Witten admitted, I didn't see this screenshot. Can I just ask you, are malicious on the state law claims, are malicious prosecution and what was the other one, malicious prosecution? False arrest. Are those intentional torts? Yes. So there's no immunity on those either, right?  No, no, no. Are they intentional torts? I thought everyone agreed there's no immunity on gross negligence and intentional torts. It depends on the facts that are developed because you can find in, someone can sue for malicious prosecution and at the evidentiary hearing, one can find facts that show no intentional conduct. It was a mistake. You might lose on the merits, but there's not immunity on an intentional tort, right? If it was in fact a criminal prosecution initiated with malice, which is what is required. That's a merits inquiry, right? Yes, yes. There's not, but if, okay. No, no. But here we are, we had discovery. We went out on summary judgment, not on a motion to dismiss. And the evidence, I don't think anyone can argue looking at the record that Mr. Witten was grossly negligent, intentionally did anything. The facts are laid bare and they're not disputed that my client didn't know. You could make a run at gross negligence, no? Not under. Before he had this guy summoned, he didn't bother to check whether he was an appropriate target of a summons? Virginia law is pretty strict on gross negligence. And a case came out a year ago, the Elliott case, the want of even scant care. Great. Scant. No, you take some care. What care did he take to make sure that the summons was going to someone who could receive a summons? As far as I read the record, he just assumed, like I've never seen it where a registered agent isn't an employee. But an assumption isn't taking scant care. No, if you did. Checking your records would be the scant care. Right. If you dig deeper in the record. Like he might have checked his records and there was a mistake in the record keeping. And then you say, well, it wasn't gross negligence for him to rely on his records, but he didn't check the records. If you dig deeper in the record, you will see that, and this isn't blaming Ms. Blamer, because a lawyer is the captain of the ship. And he wasn't on deck when he should have been. But that's not gross negligence under Virginia law. Virginia law is very clear. And why? Because she was a paralegal who prepared these pleadings on a regular basis, and part of her job was to check whether the registered agent was also an officer. Wrongly, he can't. The lawyer can't escape liability in a malpractice or negligence action by saying, hey, I relied on my experience paralegal. This is the process put in place. But that does negate gross negligence. I argue, too, under Virginia law, if you look at the cases, it's not just, wow, all he had to do was look at this and he would have found out, no, that's negligence. That's negligence in Virginia. That's not gross negligence. And then you have someone who's personally served with a pleading that says here, warning to respondent. So guess what? Contributory negligence is an absolute defense to gross negligence. Absolute bar. And Mr. Rue admitted he got this. He was personally served. Yes, I might have read it. I might not have. Yes, I see this language. And he did nothing. Did nothing. So Mr. Whitten's mistake was being inexperienced, not looking at the screenshot, coming in and assuming everything had been checked, which lawyers unfortunately do at times. They're still responsible. But it doesn't make them grossly negligent. Had Mr. Rue called up and said, I'm only the registered agent. I don't have anything to do with this. And Mr. Whitten said, nope. I'm going forward. You have to come in. I'm going to do this. I don't believe you. Now, that might have been a different story. But he never did that. This is simple negligence under Virginia law, not gross negligence. And he's entitled to sovereign immunity based on his position under Messina versus Burden. I think, you know, for the full record from below, my memorandum in support and the full transcripts really lay out everything that went down as this thing went towards the ultimate outcome. So Mr. Rue, he could have done some things. And Mr. Whitten, yes, it shouldn't have happened. But that's what sovereign immunity is there for. And to the extent there's any Fourth Amendment, clearly qualified immunity. I don't have anything else to say. Thank you. I'd like to address a few points that came up in Ms. Judkin's argument. Much was made about any reasonable person could see that the summons was directing Mr. Rue's attendance. In Mr. Whitten's sworn interrogatory answers, he cannot explain why Mr. Rue was identified, why the asterisk was checked, respondent same as defendant. I submit that if an author of a document directing the arrest of someone cannot explain the document, no reason, the notion that no reasonable person would think otherwise, it's not supported by the record in any way, nor by common sense. Mr. Whitten could not explain the document, the summons, or the KPS. His sworn interrogatory answers appear at 98 to 99 of the appendix. We have also not talked about the Monell issue here on the county's policies. Conceded policy of conflating registered agent status with corporate debt liability. Qualified immunity obviously does not apply in the Monell. Can you say that's the county's conceded policy? That Ms. Blamer's testimony. Ms. Blamer's testimony, that was her custom and practice, but arguably. But who's the relevant decision maker under Monell? The relevant decision maker is the county attorney here. And so Ms. Blamer had been preparing tax collection documents and working in tax collection at the county since they started handling tax collection, which was in 2008. She prepared the documents at issue here. And Mr. Whitten has conceded that she always knew what she was doing. She is the person, and we heard Ms. Judkins talk about this, she prepared all the pleadings. If there is someone who can opine on what the county's policy with respect to preparing tax collection documents is, it's Ms. Blamer. She's been there since the beginning. So you think that the county had awareness of this policy? Absolutely. Mr. Whitten has testified that he is. Mr. Whitten's not the county. He's the county. That's correct, that Mr. Whitten in his official capacity as the county attorney is the relevant decision maker here. You say the county and the county attorney are two different things, right? And so for Monell liability, wouldn't this policy have to be attributable to the county itself? Yes, and Mr. Whitten in pursuing tax collection documents was acting on behalf, tax collection proceedings was acting on behalf of the county. That's not enough. We have to be able to show that the county would have been aware of this policy. It's such a well-known policy that the actual Monell decision maker, the county of whatever, I can't remember what county we're in. County of Warren. Thank you. So the county of Warren, you can attribute this policy to the county because it's so open and notorious that we can assume the county knew about it. But Mr. Whitten knowing about it doesn't get you there. Monell itself is very clear that it does not have to go, the relevant decision and policy does not have to go up through the formal challenges or be a formal written, I'm sorry, the formal channels. It doesn't have to be a written policy. If it is a custom or usage with the effect of law, then it's a policy under Monell. Monell is also really clear that you have to have the ultimate decision maker. And there's no evidence in this record about the ultimate decision maker about this policy. Mr. Whitten, the county attorney, is the only person who is in a position to pursue tax collection on behalf of the county. I'm sorry. He has to be given the authority to do that by the county, right? That's correct. And he has that authority. He's the only person with that authority in this case. Somebody that has authority over him that gave him that authority, right? It has to be. The county attorneys, unless you tell me that Virginia law is different and it says there's something in the Virginia statute or local regulation that says that he has this power. There is. In fact, the statute says that he has the power to determine what these forms look like. No, I'm sorry. The statute is establishing the position of county attorney. It says that he has the power to prosecute various activities, including collection activities, on behalf of the county. Obviously, the way that the forms are filled out in furtherance of those policies is something squarely within his control. I wish I could point you to where in the briefs the statute is. The statute is laid out, but it is in there. I think that the fact that Mr. Witten's concession that he never personally checked, he never checked at all whether Mr. Ryu was the proper party to be served, is dispositive on the Fourth Amendment issue. He has a duty of individualized suspicion prior to having someone arrested. We're dealing with a seizure here, and the question is whether it was reasonable. That's squarely a Fourth Amendment issue. This is not negligence. This was not a mistake. This is what the county did. This is how they filled out tax collection documents. In this case, as we see in the record, he was identified as registered agent every single time. Mr. Witten cannot explain why he filled out the tax collection documents that way. No reasonable person would have been on notice given the circumstances here. This is a very specific set of facts. I don't think it opens a floodgate, nor does it run contrary to the line of cases that say valid court orders must be followed. I will also point out that gross negligence is relevant only to the availability or non-availability of sovereign immunity. It's not a separate claim. I just wanted to make that clear. We haven't pledged it as a separate claim. Here, it's very clear that not checking the records at all, conceitedly, is grossly negligent, and sovereign immunity wouldn't be available in any event. If your honors don't have any further questions, I think I'm all done. Thank you very much. Thank you. We will come down and greet the lawyers, and we'll take a brief recess.
judges: Diana Gribbon Motz, Stephanie D. Thacker, Pamela A. Harris